The court will now call the next case, Beeple v. Biagi. It should be noted for the record that Justice Chapman is also participating in this case, although she is not available for argument today. She will be reading the briefs and listening to arguments, so please, counsel, be clear in speaking into the microphone so that all of your remarks are picked up on the mic. Counsel, for the appeal, you may proceed. Thank you, Your Honor. May it please the Court? Counsel? This is a state appeal from an order suppressing the evidence against the defendant and rescinding his statutory summary suspension after the defendant was charged with driving under the influence of drugs. The basis of the circuit court's order was its ruling that the defendant was improperly seized. The defendant was driving 32 miles an hour on a dark country road after midnight. A state trooper was traveling in the same direction as the defendant, behind the defendant, going at appropriate speed for the 55-mile-an-hour speed limit and so gradually caught up with the defendant, who was traveling slower. As the officer caught up to the defendant, the defendant slowed and stopped his vehicle partially in the road. The officer slowed and stopped his vehicle at the same time that the defendant did and then pulled up closer behind it, stopped his vehicle again, turned on his squad car's steady white floodlights, got out of the squad car and approached the defendant's vehicle. And it was on those facts that the circuit court held that a seizure under the Fourth Amendment had occurred, one that the circuit court ruled could not be justified under the community caretaking doctrine. And it was on that basis that the court granted the defendant's motion to suppress and petition to rescind. And the state's primary argument in this state appeal is that the initial interaction between the officer and the defendant was not a seizure at all. Let me ask you, counsel, so the officer stated that there was no traffic stop for any kind of offense. Is that correct? He stated that he believed at the time that he turned on the overhead lights and approached that no traffic violation had occurred, yes or no. The people's argument is that this was a consensual encounter outside the Fourth Amendment and that reasonable suspicion then subsequently arose when the officer detected signs of impairment. The parties and respectfully the circuit court were confused about the difference between the community caretaking doctrine and the consensual encounter doctrine. The Supreme Court 10 years ago in Ludeman explained the difference between the two doctrines and stated that the consequence of the confusion about these two doctrines is that it suggests that if police lack reasonable suspicion, they cannot approach a citizen unless acting in a community caretaking function. But, of course, that's not true. An officer may approach any citizen and ask questions so long as he doesn't convey the message that compliance or cooperation is required. And so it was a result of that confusion in the court below that caused the circuit court to rule as it did, and that's why this case is appropriate for plain error review, because clear legal error occurred where the court failed to apply the consensual encounter doctrine. Now, the defendant is arguing that the state is stopped from making this consensual encounter argument because the state conceded in its motion to reconsider that the consensual encounter doctrine didn't apply. One point is that the basis for the state's concession in that motion to reconsider was that the defendant, that the consensual encounter doctrine didn't apply because the defendant didn't signal that he needed help. But, of course, that was inaccurate even on its face because under the consensual encounter doctrine, an officer can approach anyone and ask questions whether or not he's flagging the officer down for help. Furthermore, the estoppel argument should be rejected because estoppel only occurs if a party agrees to or initiates a procedure. And here the state made a common legal error, as recognized in Ludeman, and conceded a pure legal issue. And the Supreme Court in the Horrell case rejected an argument that the state is stopped from raising on appeal a wrongly conceded legal issue. And I'd also argue or point the court toward the defendant's cited case, the Denson case. Now, in that case, the state filed a pretrial motion in Lemony so that the defendant wouldn't contemporaneously object to certain evidence. And then the state argued on appeal that the defendant had been required to contemporaneously object. The court ruled that the state was stopped from making that argument. But here the defendant isn't arguing that he would have presented additional evidence or made any additional legal argument if the state hadn't first confined itself to making a community caretaking argument at the suppression hearing and then made those concessions in the motion to reconsider. So for these reasons, this court should consider the issue under the plain error doctrine. And plain error did occur because under Ludeman and the subsequent cases citing it, these cases are unanimous in holding that a seizure does not occur but rather a consensual encounter occurs where an officer approaches a person in a parked car while shining a flashlight or a spotlight. That's been ruled not a seizure. No person would believe that a no reasonable innocent person would believe that he was not free to leave. A seizure requires the officer to use physical force or a show of authority. And here the defendant's argument about, well, what constituted that show of force or authority, those facts haven't been ruled to constitute a seizure. The defendant is arguing that the officer's higher speed made him pull over. Was this a flashlight or a spotlight? He used both, Your Honor. Oh, I thought it was overhead. A bunch of lights. Right. I think he was, he... In his light bar. Yes, in his light bar he testified that there were two, I believe, spotlights. Oh, I thought they had a whole bunch of lights now. I believe it's two. Like a whole bunch of LEDs. I do believe that he said there were a couple of spotlights. I mean, the video doesn't show specifically what lights. My question is how white was the road there? He couldn't pull all the way out through it. There wasn't enough room, was there? No, Your Honor. I don't believe so. So he wasn't just parked there. He didn't pull over until the lights turned on behind him, correct? No, Your Honor. That's not correct. He was driving. He was just parked on the side of the road and the police car turned around and came back? No, Your Honor. The two cars were traveling... Opposite directions. Oh, I thought it was first. No, Your Honor. I'm sorry. In the same direction. Oh, at all times. Okay. Yes, the officer who was traveling at a higher rate of speed got caught up to the defendant who was traveling at a lower rate of speed. And this was like a... Not a highway, really. It was like a country... Did it have a marking down the center line? No, Your Honor. No center line. Just a... It was a rural road. A rural road. Yeah. And there wasn't room enough to pull off to the right. The clerk would get off the pavement. You'd be in a ditch. Not all the way, Your Honor. No, not all the way. Yeah, he was not able to pull all the way off. And he didn't stop until the officer turned the lights on behind him? No, Your Honor. He was stopped when the officer came by? He stopped... He... As the officer neared the rear of his vehicle, they were continuing to turn... Were his lights on, the white lights on at that time or not? No, Your Honor. The officer did not turn on the white lights... Until when? Until the defendant had come to a complete stop. In fact, several seconds after the defendant had come to a complete stop. The officer was behind the defendant, traveling behind the defendant, as the defendant slowed and stopped. And the officer slowed and stopped as the defendant slowed and stopped. Again, the defendant was partially in the road, so the officer slowed and stopped. In fact, he had his turn signal on, so it might have appeared as though he was going to turn. It was near a driveway. I beg your pardon? He was near a driveway. He was, Your Honor, yes. And so at that point, the squad car's spotlights were not on. Both cars came to a complete stop. Then there was a pause of a few seconds. Then the officer edged forward to being right behind the defendant's vehicle, turned on his spotlights, called in a motorist assist to the dispatcher, and got out of his squad car and approached. Now, was he not partially in the driveway at that time or not? Your Honor, I do not believe that he was partially in a driveway. I had a hard time figuring out where they were. Yeah. Well, there is a video in the record that the court can review. I think they had just passed a couple of driveways. Most of his vehicle was just off the kind of the gravel shoulder, and then part of the vehicle, the driver's side vehicle, was still in the road. But I would note that under the consensual encounter doctrine, an officer can approach any citizen and engage with them, even citizens who are on the side of the road, who are stopped on the side of the road. And the question of how far the car was over and whether the road was obstructed, if that's where Your Honor was going with that, it would only come into account if this court were to consider the issue under the community caretaking doctrine. But even under the community caretaking doctrine, an officer can approach a vehicle that is stopped on the side of the road. There need be no obstruction. Thank you, counsel. You'll have an opportunity for that. Thank you. Counsel, for the appellee. May I please the court? Counsel. First and foremost, this case is not a mere legal issue. This is very fact dependent and very based on the trial court's finding of credibility in terms of there is a video, but there was also testimony about this encounter from the officer that the trial court did not credit. Now, I'd first like to address the issue of whether or not this was a consensual encounter. The state suggests that there was simply a legal error below and that this was not a concession. Yet, what we have is an affirmative concession that a seizure did occur, and that occurred during the motion to reconsider. So there was some legal confusion. It appeared on the prosecution's side that was not clarified in the initial motion, and then in the motion to reconsider, they said, well, we do concede this is a seizure, but it was justified by community caretaking. What about the state's argument that they're not bound by any concession? This court is certainly, you know, within its rights to consider the issue. However, what you have here is not simply a forfeiture, but an affirmative waiver below, and that denies the trial court the opportunity to reconsider the issue and to correct any error, to reconsider the facts that form the basis of the ruling. It also denied trial counsel the opportunity to make additional arguments and, if necessary, to seek to reopen proofs on that issue. So a state appeal is a limited review of a ruling below, and I think to expand that to revisit issues that the state has conceded and stop the trial court from reconsidering or reevaluating is not an appropriate use of judicial resources. However, even if this court does consider the issue, this was a stop. This is not a parked car case. What you have here is a situation where, you know, we're not saying the officer ran him off the road. That's obviously not the situation. But the circumstances created a situation where any reasonable, innocent person would not have felt free to leave. It's dark. It's raining. It's a country road. It's got, you know, it's a splotchy finish. There are no lines. There are no speed markers. You're driving at night. Was it just a light rain or was it raining hard? I would—it's a light rain, so—but I would say that, you know, this isn't a torrential downpour by any means, but it still can be—it still can cause the road surface to be slick and someone driving in the middle of the night to— So how long was the police car following the other car? So we don't have clear testimony about that. What we have is a video that begins a minute before both cars are on the side of the road. I presume, although it's not clarified in the record, that this is how the car video functions, that it turns—it backstops from the time that the officer initiates a stop. Was there any testimony about how long? I don't believe so. I could be mistaken, but I don't believe there was testimony about how long he was following him. The officer did testify he didn't see any traffic violations, and I would submit that a speed of 32 is certainly not suspicious at night in even a light rain driving down a country road. So there's no reason to suspect that there was wrongdoing. Now, again, this is not a parked car case. This is a—as you'll see on the video, we have—you can see Mr. Biagi's car from the officer's video. They're traveling in the same direction, and because the officer is going what he estimates to be 20 to 25 miles an hour faster than Mr. Biagi's car, he does approach the car rapidly. You then see Mr. Biagi's car slow down as they hit a part of the road where there are railings and guardrails and ditches on the opposite side. So he's slowing down as we enter that, and then two driveways appear, one on either side, and both driveways appear to be connected to houses. As you can see a little bit better on the light, you've got a driveway with cars parked in there. And so what Mr. Biagi does is he pulls off into the driveway on the right. He's not turning right into the driveway, but he's pulling over into what I believe is a driveway based on the video. You'll see he's got about three-quarters. It's just his left two wheels that are in the road. The car's lights don't go off. The car is not shut off. Any reasonable person following this car would say, oh, I'm going faster. This car is slowing to let me go by. And then this marked police car then pulls in behind him and turns on what he terms takedown lights. So that's telling. And we've got a flood of light. He approaches with uniformed officer flashlight and takes Mr. Biagi's license. So at that point we've got a seizure. So under either the waiver principles or under the seizure principles, there was a seizure at this point without justification. Now, community caretaking is not an applicable exception here. You have to first evaluate whether objectively Williams was performing a function other than investigating a crime. Now, it's important to note in context that what the trial court found is actually, and he says this in the motion to reconsider hearing. He says, I think, to be perfectly frank, I think the officer was there to investigate a DUI when he made the stop. Now, his subjective intent is not important, but that really gives you an idea of the factual findings made by this trial court. He says, and it's not against the manifest weight of the evidence to find that there was nothing in the operation of Mr. Biagi's vehicle that would cause one to suspect he needed assistance. It was a controlled stop. He didn't pull into the driveway for help. He didn't signal for help. There was no indication that the car was malfunctioning. So there's no reason to suspect that there was any need for assistance. So on that part of the community caretaking act, it fails. Additionally, any community caretaking stop has to be objectively undertaken to protect the safety of the general public. Mr. Biagi was not presenting any danger to the public. He was almost completely off of the road and had pulled over in a manner that it was clear he was intending to continue on his pathway. If not, he would have pulled into the driveway itself. Or there would be some blinkers, there would be some indication. So it's from the video you see it's a pullover with the intent to pull back on. Now, again, Your Honor's mentioned the driveways. This stop did occur at the driveways. There are driveways on either side. Again, one has cars in it. So this is not a situation where there was a driver stranded in the middle of nowhere without assistance. There was no reason to suspect that he was seeking help or needed help. And so in that sense, the top court's ruling was appropriate. Even so, even if the manner of pulling over and the lights and the marked squad car, if this circumstances as a whole does not present, does not support the top court ruling, we still don't have reasonable suspicion by the time Mr. Biagi is asked to get out of the vehicle, the trooper comes and opens the door. At that point, certainly the officer testifies that he saw impairment, but the video doesn't show impairment and the trial court didn't credit his testimony in general. Because the trial court didn't reach this issue, there are not specific findings, but underlying the issue is the general credibility problems of Trooper Williams. So certainly it would be well within this court's discretion to affirm the trial court on the basis of a lack of reasonable suspicion. Finally, setting aside the issues of seizure, Mr. Biagi also made a prima facie case that he did not refuse additional testing and that the state failed to meet its burden of rebutting that issue. Through Williams' testimony, again, he was asked by counsel, did Mr. Biagi refuse testing? His response was, well, he never explicitly said yes. He acted like he wanted to and that he was unable to use, he said he was unable to use the restroom. He was never given a sample cup. There's no testimony about how long this process actually took. So we're not sure even if, you know, how long the officer waited, whether it was communicated that this would be considered a refusal or any of those issues. So certainly on that basis as well, the trial court's ruling could be affirmed. I'm going to have just a moment.  Thank you, counsel. Your thought? The defendant stated that the circuit court didn't make specific findings regarding impairment, but the court found that the defendant greeted the officer again after midnight by saying good afternoon. His pants were down. He exhibited slow speech and slow movement, and he was slumped over in his seat. The video didn't show his speech or his posture. These factual findings were found by the court and not against the manifest weight of the evidence. Also, even if the defendant is arguing that he stopped because he wanted to let the officer pass. Now, first off, the officer can't have known what was in the defendant's mind when he saw the defendant stop his car ahead of him partially in the road. Also, even if the officer's higher speed coming up behind him was the but-for cause of the defendant's decision to stop his car, that doesn't mean that the officer stopped him. It doesn't mean that the officer effected a seizure of him. Here, a reasonable innocent person would feel free to leave while driving away from a squad car that was driving at an appropriate speed with no emergency lights activated. My understanding was it was a light rain, is that correct? Yes, Your Honor. The officer's bike bar were on air. And it's a narrow, unmarked road. Yes. And you're going up a hill, and so you don't know where it was. I guess there could be a car on the other side, maybe not. Could be anything on the other side. Or maybe a turn, who knows? Yes, Your Honor. So, I thought I read in the briefs that the officer said he was going 55 miles an hour, which is probably the fastest speed you're allowed to go on that road. He said he was going at an appropriate speed for the road. Well, where did that 55 come in? Because that was the speed limit for the road. So he was going 55, that's what it said in the brief anyhow. Well, he didn't say that he was going 55. Why did the brief say he was going 55? I don't believe. Did it say that? I thought it did. I don't believe so, Your Honor. Well, maybe. I mean. For some reason, I see it. I thought it said 55. Well, he said that he was going at an appropriate speed for the road. So he put it at how fast was he? But nobody knows how fast he was going? He did not, no. Okay. But the question is still. So maybe the appropriate speed would be just a little bit faster than the car in front of him. Well, when the officer neared the defendant over a substantial distance. So he was gaining on him. Yeah. So he was going faster than the car in front of him. He was going faster than the defendant was going. And the car in front of him was going. I thought it said 32 or something like that. 32, yes. Yes. And then the defendant slowed and the officer slowed at the same time. And then they both came to a stop. But, you know, the issue then is whether the defendant, seeing a car come up faster on him, would feel not free to leave. Would feel seized. Would feel as though he was being detained at that point. He had to turn those lights on before he got out of the car, right? He did, yes. So then at that point, you think he's going to turn all those lights on? No, Your Honor. The Ohio Supreme Court in Ludeman has specifically stated that an officer who, without more, simply activates spotlights or floodlights or uses a flashlight when initiating an encounter with a citizen does not transform that encounter into a seizure. The court in Ludeman refused to require an officer to choose between initiating an encounter in the dark and initiating a seizure. Consensual encounters can occur after dark as well without becoming seizures. I hope that answers your question, Your Honor. The defendant argues that he intended to pull right back on the road and just let the officer pass him. But, again, the officer can't have known that. And the defendant argues that there were people nearby the houses, but it was after midnight. The officer, and again, I'm considering this under the community caretaking doctrine, which wouldn't apply unless the court ruled that there was a seizure. But under the community caretaking doctrine, the officer was not constitutionally required to just drive past a vehicle stopped partially in the road and hope that the defendant and his passenger were okay and that they weren't having car trouble and that no one would collide with this vehicle stopped partially in the road. Thank you. Thank you, counsel. The court will take this matter under advisement and issue its decision in due course.